UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRIAN EDWARD REYNOLDS,

                        Plaintiff,

-against-

UNKNOWN NAMES OF MANUFACTURER OR RESPONSIBLE INDIVIDUALS,

                        Defendant.

24-CV-6854 (KMW)

ORDER OF DISMISSAL
WITH LEAVE TO REPLEAD

KIMBA M. WOOD, United States District Judge:

    Plaintiff, who currently is incarcerated at a Federal Correctional Institution ("F.C.I.") in Jesup, Georgia, brings this action *pro se* regarding events allegedly occurring during his incarceration in F.C.I. Otisville ("Otisville") between 2019 and 2022. By Order dated November 4, 2024, the court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees.[1] (ECF No. 6.) For the reasons set forth below, the Court dismisses the complaint, but grants Plaintiff 60 days' leave to replead his claims in an amended complaint.

## STANDARD OF REVIEW

    The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also

---

[1] Prisoners are not exempt from paying the full filing fee even when they have been granted permission to proceed IFP. *See* 28 U.S.C. § 1915(b)(1).

dismiss a complaint if the Court lacks subject matter jurisdiction over the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

Although the law mandates dismissal on any of these grounds, the Court is obligated to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id.* at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Id.* at 678-79. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible–not merely possible–that the pleader is entitled to relief. *Id.*

## BACKGROUND

Plaintiff, who states that he does "not know" the basis for the Court's jurisdiction, alleges that sometime between March 2019 and March 2020, while at Otisville, his "reflux medication"

was changed from Ranitidine to Famotidine "without explanation."[2] (ECF No. 1 ¶ III.) He further complains that he cannot "get the B.O.P. to screen [him] for possible traces or the existence of cancer." (*Id.*) Plaintiff alleges that he continues to "suffer reflux" and "claim[s] the defendants in this matter knowingly poisoned [him] without care and have left [him] in a panic worrying if [he] will end up (or have now) with cancer." (*Id.*) Finally, Plaintiff asserts that "the defendants were aware of the potential dangers prior to increasing the ingredient in Ranitidine and [he] may be susceptible to cancer at any time because of their deliberate indifference to [his] life." (*Id.*)

Plaintiff names as Defendants "Unknown Names of Manufacturer or Responsible Individuals," and seeks $1 million in damages for "constant and continued stress and anxiety," $10 million in punitive damages, and "immediate release from custody to properly monitor health." (*Id.* ¶ IV.)

## DISCUSSION

The subject matter jurisdiction of the federal district courts is limited and is set forth in 28 U.S.C. §§ 1331 and 1332. Under these statutes, a federal district court has jurisdiction only when a "federal question" is presented, 28 U.S.C. § 1331, or when plaintiff and defendant are citizens of different states and the amount in controversy exceeds $75,000, 28 U.S.C. § 1332. "[A]ny party or the court *sua sponte*, at any stage of the proceedings, may raise the question of whether the court has subject matter jurisdiction." *Manway Constr. Co. v. Hous. Auth. of Hartford*, 711 F.2d 501, 503 (2d Cir. 1983) (emphasis added); *see* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss

---

[2] The Court quotes from the complaint verbatim. All spelling, grammar, and punctuation are as in the Complaint unless noted otherwise.

the action."); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative[.]").

A.     **Federal Question Jurisdiction**

To invoke federal question jurisdiction, a plaintiff's claims must arise "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A case arises under federal law if the complaint "establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Bay Shore Union Free Sch. Dist. v. Kain*, 485 F.3d 730, 734-35 (2d Cir. 2007) (quoting *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 690 (2006)). Mere invocation of federal jurisdiction, without any facts demonstrating a federal law claim, does not create federal subject matter jurisdiction. *See Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1188-89 (2d Cir. 1996).

Plaintiff's allegations could be read to assert claims against the government or government officials in connection with the medical treatment he received at Otisville. For the following reasons, however, the complaint does not provide sufficient facts to state any plausible claims under the Court's federal question jurisdiction.

1.     **The Federal Tort Claims Act**

The doctrine of sovereign immunity bars federal courts from hearing suits for monetary damages against the federal government, including its agencies and employees acting in their official capacities, except where sovereign immunity has been waived. *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. Sherwood,* 312 U.S. 584, 586 (1941)); *see Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994) ("Because an action against a federal agency . . . is essentially a suit against the United States, such suits are . . . barred under the doctrine of sovereign immunity, unless such immunity is waived.").

The Federal Tort Claims Act ("FTCA") provides a waiver of sovereign immunity for certain claims arising from the tortious conduct of federal officers or employees acting within the scope of their office or employment. *See* 28 U.S.C. §§ 1346(b)(1), 2680. "The proper defendant in an FTCA claim is the United States, not individual federal employees or agencies." *Holliday v. Augustine*, No. 3:14-CV-855, 2015 WL 136545, at *1 (D. Conn. Jan. 9, 2015). Although Plaintiff does not name any specific federal agencies or officers, he does complain about how he cannot "get the B.O.P. to screen him" for cancer. (ECF No. 1 ¶ III.) Since Plaintiff complains about the specific inaction of a federal agency, the Court construes Plaintiff's claims as brought against the United States of America.

A plaintiff must comply with the FTCA's procedural requirements before a federal court can entertain his claims. *See Johnson v. Smithsonian Inst.*, 189 F.3d 180, 189 (2d Cir. 1999), *abrogated on other grounds*, *United States v. Kwai Fun Wong*, 575 U.S. 402 (2015). Specifically, before bringing a claim for damages under the FTCA, a plaintiff must first exhaust his administrative remedies by filing a claim for damages with the appropriate federal government entity and receiving a final written determination. *See* 28 U.S.C. § 2675(a). Such an administrative claim must be in writing, specify the amount of damages sought, and be filed within two years of the claim's accrual. 28 U.S.C. § 2401(b). A plaintiff may thereafter challenge the Government's final denial in a federal district court by filing an action within six months after the date of the mailing of the notice of final denial by the federal entity. *See* 28 U.S.C. § 2675(a). If the appropriate federal entity makes no final written determination within six months of the date of the plaintiff's filing of the administrative claim, the plaintiff may then bring an FTCA action in a federal district court. *See id.*

To the extent that Plaintiff's Complaint asserts a claim under the FTCA against the United States, the claim cannot go forward because he has not alleged facts demonstrating that he filed an administrative claim for damages with a federal governmental entity and received a final written administrative determination before bringing this action. Additionally, Plaintiff has not alleged facts indicating that it has been more than six months since he filed an administrative claim. The Court therefore dismisses any claims Plaintiff may be asserting under the FTCA for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

Because Plaintiff is *pro se*, the Court grants Plaintiff 60 days' leave to replead an FTCA claim against the United States in an amended complaint. In this amended complaint, Plaintiff must allege that he has exhausted his administrative remedies.

### 2. Deliberate Indifference to Serious Medical Needs

Plaintiff alleges that BOP officials "were aware of the potential dangers prior to increasing the ingredient in Ranitidine and [he] may be susceptible to cancer at any time because of their deliberate indifference to [his] life." (ECF No.1 ¶ III.) The Court construes these assertions as asserting claims arising under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *See Ashcroft*, 556 U.S. at 675 ("[*Bivens*] is the federal analog to suits brought against state officials under [Section 1983].").

To state a claim for relief under *Bivens*, a plaintiff must allege facts that plausibly show that: (1) the challenged action was attributable to an officer acting under color of federal law, and (2) such conduct deprived plaintiff of a right, privilege, or immunity secured by the Constitution. *See Thomas v. Ashcroft,* 470 F.3d 491, 496 (2d Cir. 2006) (citing *Bivens*, 403 U.S. at 389). *Bivens* relief against federal officials in their individual capacities is available only where the individuals were personally involved in the alleged constitutional violations. *Ziglar v. Abbasi*, 582 U.S. 120 (2017); *Turkmen v. Hasty*, 789 F3d 218, 233 (2d Cir. 2015); *Perez v. Hawk*, 302 F.

Supp. 2d 9, 19 (E.D.N.Y. 2004) ("Because personal involvement by a federal official is prerequisite to liability under *Bivens,* federal officials who are not personally involved in an alleged constitutional deprivation may not be held vicariously liable under *Bivens* for the acts of subordinates.").

The Supreme Court has permitted a damages remedy against federal employees under *Bivens* in only three contexts: (1) unreasonable search and seizure under the Fourth Amendment, *Bivens*, 403 U.S. 388 (1971), (2) employment discrimination under the Fifth Amendment, *Davis v. Passman*, 442 U.S. 228 (1979), and (3) inadequate medical treatment of an inmate under the Eighth Amendment, *Carlson v. Green*, 446 U.S. 14 (1980).  Recently, "the Court has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity," *Ziglar*, 582 U.S. 120, 135 (2017), and a *Bivens* remedy is not available, "where there are 'special factors counselling hesitation in the absence of affirmative action by Congress,'" *Hernandez v. Mesa*, 582 U.S. 548, 553 (2017) (quoting *Carlson*, 446 U.S. at 18).

Under *Ziglar*, unless a *Bivens* claim bears some resemblance to one of the three types of *Bivens* claims previously recognized by the Supreme Court, a court must hold that the claim constitutes a new *Bivens* context.  *Ziglar*, 582 U.S. at 140.  More recently, the Supreme Court held that even if a court finds that a case presents "parallel circumstances" with the three prior cases recognizing a *Bivens* remedy, a court may not find a *Bivens* remedy unless it also decides that there is no rational reason to think that Congress is better equipped to create such a remedy. *See Egbert v. Boule*, 596 U.S. 482, 491-93 (2022) (holding in the context of a Fourth Amendment claim under *Bivens* that "superficial similarities are not enough to support the judicial creation of a cause of action").

Because, as discussed below, the Court is granting Plaintiff leave to replead his claims, the Court declines to decide the issue of whether Plaintiff has an implied cause of action under *Bivens* until after he files an amended complaint.

The Court evaluates a prisoner's claims for deliberate indifference under the Eighth Amendment and not the Fourteenth Amendment. *Rodriguez v. Gusman*, No. 21-2841, 2023 WL 219203, at *1 (2d Cir. Jan. 18, 2023) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)) (emphasis added)). To state a claim for inadequate medical care under the Eighth Amendment, a plaintiff must allege facts showing that correction officials were deliberately indifferent to the plaintiff's serious medical condition. *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). There are two prongs that a prisoner must satisfy to make out a deliberate indifference claim for inadequate medical care under the Eighth Amendment: "an objective *and* a subjective component." *Id.* (emphasis added). To make out the objective component, a prisoner must demonstrate that the "alleged deprivation [is] . . . in objective terms, sufficiently serious." *Id.* And to make out the subjective component, the prisoner must show that the "defendant act[ed] with a sufficiently culpable state of mind." *Id.* More specifically, the "defendant must have been actually aware of a substantial risk that serious inmate harm would result." *Id.* (quoting *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006)).

A prisoner cannot sustain a constitutional claim under the Eighth Amendment where a medical professional's failure to provide adequate care is merely inadvertent or negligent. In addition, a "mere disagreement over the proper treatment" is not actionable. *See Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998); *Hill*, 657 F.3d at 123 (holding that medical officer who prescribed Motrin rather than stronger pain medication to treat a broken wrist did not have

8

the "culpable state of mind" to satisfy the subjective component of the deliberate indifference standard).

The facts alleged in the complaint do not suggest that any Defendant showed deliberate indifference. Plaintiff fails to allege that any Defendant knew or should have known of a substantial risk of serious harm to Plaintiff's health. Plaintiff's allegations are that BOP officials changed his reflux medication, "knowingly poisoned" him, and declined to screen him for cancer. (ECF No.1 ¶ III.) He further states that he continues to "suffer reflux" and "panic" that he will get cancer. (*Id.*) However, these allegations do not suggest that there was any excessive risk to Plaintiff's health posed by a BOP employee's actions. First, the facts fail to demonstrate that merely changing from one over-the-counter reflux medication to another is objectively a "poisoning" or poses an excessive risk to Plaintiff's health. Second, Plaintiff fails to even suggest that any BOP employee had the requisite culpable state of mind when they changed his medication. Plaintiff's claim that an official declined to screen Plaintiff for cancer is similarly inadequate, in that the complaint does not state facts showing that such a decision posed an excessive risk to his health. For these reasons, Plaintiff's complaint fails to satisfy either prong of the deliberate indifference standard under the Eighth Amendment.

Plaintiff is challenging the adequacy of the treatment provided and asserts, in a conclusory fashion, that it was deliberately indifferent. To the extent that Plaintiff's allegations can be construed as disagreement with decisions to change his medication and to deny his requests for cancer testing, his allegations are insufficient to give rise to Eighth Amendment claims. *See, e.g.*, *Connolly v. Dunlop,* No. 23-CV-1659, 2024 WL 4893903, at *7 (N.D. Ohio, Nov. 26, 2024) (holding that decision to treat plaintiff's reflux with over-the-counter antacid medication did not constitute deliberate indifference); *Berry v. United States,* No. 22-CV-6113,

9

2022 WL 17486238, at *4 (D.N.J. Dec. 7, 2022) (holding that decision to cease monitoring plaintiff's kidney disease while taking a reflux medication that can allegedly damage the kidneys "presents a disagreement with [the doctor's] professional judgment that close monitoring . . . was unnecessary").

Accordingly, the Court grants Plaintiff leave to replead his claim—should he wish to do so—that BOP officials violated his Eighth Amendment right to adequate medical treatment.

### 3. *Habeas Corpus* Claims

Under 28 U.S.C. § 2241, a petitioner may file a *habeas corpus* petition seeking "injunctive relief from federally imposed conditions of confinement," including claims regarding medical attention. *Thompson v. Choinski*, 525 F.3d 205, 209 (2d Cir. 2008). In a Section 2241 petition challenging the execution of a sentence, "[t]he proper respondent . . . is 'the person who has custody over [the petitioner].'" *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (quoting 28 U.S.C. § 2242) (alteration in original). When a petitioner is transferred from a facility, any claims for injunctive relief against that facility become moot. *See Braxton v. Tellez*, No. 20-CV-6352, 2021 WL 1648023, at *2 (E.D.N.Y. Apr. 27, 2021) (quoting *Hill v. Zenk*, 115 F. App'x 97 (2d Cir. 2004)); *Beagle v. Easter*, No. 20-CV-1894, 2021 WL 1026885, at *3 (D. Conn. Mar. 17, 2021) (noting that it "is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility.") (quoting *Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996) (per curiam)).

Plaintiff seeks–*inter alia*–immediate release from custody "to properly monitor health." (ECF No.1 ¶ III.) It would seem that Plaintiff is requesting release as a consequence of being

unable to obtain a screening for cancer, rather than some more general complaint about his detention. But Plaintiff's requested relief is, at best, ambiguous.[3]

For instance, Plaintiff is no longer in the custody at Otisville, where his claims arose. Based on the record, it appears Plaintiff filed this complaint while he was a prisoner in a facility in Illinois. According to the BOP *Find an Inmate* tool, Plaintiff is presently in a facility in Georgia.[4] To the extent Plaintiff was seeking release as a means to get relief from specific conditions in his Illinois facility, his claims are moot because he has been transferred from the facility about which he was complaining. The Court, therefore, dismisses any such claims without prejudice for Plaintiff to refile those claims—should he wish to do so—in the court that encompasses the district of his current incarceration. The person who has custody over the petitioner would be the warden of that facility.[5]

**B.     Diversity Jurisdiction**

Plaintiff does not allege facts demonstrating that the Court has diversity of citizenship jurisdiction to consider any state-law claims. To establish diversity jurisdiction under 28 U.S.C.

---

[3] Plaintiff should specify in any subsequent complaint exactly what relief he is seeking and why. For instance, does Plaintiff now have the injunctive relief he sought, in that he is no longer held at the facilities in either Otisville or Illinois, or does he seek release from custody altogether? If the latter, what is his basis for that relief? As the Court is granting Plaintiff leave to refile his claims, he should make it a point to spell out the exact relief he is seeking and the basis for seeking it.

[4] *See Find an Inmate*, BOP.Gov, https://www.bop.gov/inmateloc/ (enter "Brian Edward Reynolds" under the "Name" tab).

[5] Where an incarcerated individual challenges the execution of his sentence in a Section 2241 petition, he first must also exhaust the available administrative remedies before filing his pleading. *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 634 (2d Cir. 2001). Failure to exhaust is a procedural default that will be excused upon a showing of cause and prejudice. *See id.* at 630, 633-34. A court may also excuse a litigant's failure to exhaust when: "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) [an] administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003) (internal quotation marks and citation omitted); *see also Cohen v. United States,* 2023 WL 8188424, at *5–6 (S.D.N.Y., 2023) (directing plaintiff to amend his complaint to allege facts detailing the injunctive relief he sought in connection with medical care and the exhaustion of his administrative remedies with respect to that relief).

11

§ 1332, a plaintiff must first allege that the plaintiff and the defendant are citizens of different states. *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998).

Diversity must be complete; that is, "no plaintiff and no defendant [may be] citizens of the same State." (*Id.*) An inmate's citizenship is in the state where he was domiciled pre-incarceration. Any other individual is deemed a citizen of the State where he is currently domiciled. A person's domicile is defined as the place where the individual "has his true fixed home . . . and to which, whenever he is absent, he has the intention of returning." *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) (internal quotation marks and citation omitted). An individual "has but one domicile." *Id.* When a plaintiff is incarcerated, there is a rebuttable presumption that he retains his pre-incarceration domicile, rather than establishing a new domicile based on the location of his current incarceration. *See Blumatte v. Quinn*, 521 F. Supp. 2d 308, 312 n.3 (S.D.N.Y. 2007) (citing *Fermin v. Moriarty*, No. 96-CV-3022, 2003 WL 21787351 at *2 (S.D.N.Y. 2003) ("It is well-established that a prisoner does not acquire a new domicile when he is incarcerated in a state different from his previous domicile. Instead, the prisoner retains his pre[-]incarceration domicile [for diversity purposes]; although this presumption is rebuttable in the Second Circuit[.]")).

Because an agency of the United States is not a citizen of a state for purposes of diversity jurisdiction, it does not count as a citizen in a diversity case. *Barnes v. Fort Hamilton Fam. Homes*, 524 F. Supp. 3d 40, 43 (E.D.N.Y. 2021) (citing *Melendez-Garcia v. Sanchez*, 629 F.3d 25, 41 (1st Cir. 2010)); *see also* 13E Wright & Miller, Federal Practice & Procedure § 3602, n.19 (3d ed. 2009) (collecting cases regarding federal agencies). The Bureau of Prisons is, thus, not a state.

Here, Plaintiff filed the complaint from a facility in Illinois and alleges that he was incarcerated at Otisville when the underlying events occurred. However, he does not identify his pre-incarceration domicile, the entity or entities he seeks to sue, the nature of those entities, or any relevant addresses for them. Accordingly, Plaintiff has failed to demonstrate that there is complete diversity among the parties.

Additionally, a plaintiff must allege to a "reasonable probability" that the claim exceeds the sum or value of $75,000.00, the statutory jurisdictional amount. *See* 28 U.S.C. § 1332(a); *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006) (citation and internal quotation marks omitted).

In his Complaint, Plaintiff alleges that his injuries (1) are not known currently, but (2) have caused him millions of dollars in damage. However, he must provide *facts* supporting a claim that he suffered more than $75,000 in damages, which he does not do here.

The Court therefore lacks diversity of citizenship jurisdiction of Plaintiff's claims and dismisses the action for lack of subject matter jurisdiction.

## LEAVE TO AMEND

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill*, 657 F.3d at 123-24; *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)).

In an abundance of caution, and in light of Plaintiff's *pro se* status, the Court grants Plaintiff 60 days' leave to amend his complaint and provide more facts about his claims. First, Plaintiff must name as the defendants in the caption,[6] and in the statement of claim, those individuals who were allegedly involved in the deprivation of his federal rights. If Plaintiff does not know the name of a defendant, he may refer to that individual as "John Doe" or "Jane Doe" in both the caption and the body of the amended complaint.[7] The naming of John Doe defendants, however, does *not* toll the three-year statute of limitations period governing this action and Plaintiff shall be responsible for ascertaining the true identity of any "John Doe" defendants and amending his complaint to include the identity of any "John Doe" defendants before the statute of limitations period expires. Should Plaintiff seek to add a new claim or party after the statute of limitations period has expired, he must meet the requirements of Rule 15(c) of the Federal Rules of Civil Procedure.

In the "Statement of Claim" section of the amended complaint form, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each defendant. If Plaintiff has an address for any named defendant, Plaintiff must provide it. Plaintiff should include all of the information in the amended complaint that Plaintiff wants the Court to consider in deciding whether the amended complaint states a claim for relief. That information should include:

a) the names and titles of all relevant people;

b) a description of all relevant events, including what each defendant did or failed to do, the approximate date and time of each event, and the general location where each event occurred;

---

[6] The caption is located on the front page of the complaint. Each individual defendant must be named in the caption.

[7] For example, a defendant may be identified as: "Correction Officer John Doe #1 on duty August 31, 2010, at Sullivan Correctional Facility, during the 7-3 p.m. shift."

  c) a description of the injuries Plaintiff suffered;

  d) any information Plaintiff has about each defendant's state of mind; and

  e) the relief Plaintiff seeks, such as money damages, injunctive relief, or declaratory relief.

Essentially, Plaintiff's amended complaint should tell the Court: who violated his federally protected rights and how; when and where such violations occurred; and why Plaintiff is entitled to relief.

Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wants to include from the original complaint must be repeated in the amended complaint.

## CONCLUSION

The Court dismisses Plaintiff's complaint, filed IFP under 28 U.S.C. § 1915(a)(1), for failure to state a claim on which relief may be granted, 28 U.S.C. § 1915(e)(2)(B)(ii), and for lack of subject matter jurisdiction, Fed. R. Civ. P. 12(h)(3).

Plaintiff is granted leave to file an amended complaint that complies with the standards set forth above. Plaintiff must submit the amended complaint to this Court's Pro Se Intake Unit within sixty days of the date of this order, caption the document as an "Amended Complaint," and label the document with docket number 24-CV-6854 (KMW). An Amended Civil Rights Complaint form is attached to this order. No summons will issue at this time. If Plaintiff fails to comply within the time allowed, and he cannot show good cause to excuse such failure, the complaint will be dismissed for failure to state a claim upon which relief may be granted.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

15

The Court directs the Clerk of Court to hold this matter open on the docket until a civil judgment is entered.

SO ORDERED.

Dated:   November 20, 2025
         New York, New York

/s/ Kimba M. Wood
KIMBA M. WOOD
United States District Judge